ISRAEL CODDINGTON, JOHN HUBERT, and LEVI HETFIELD, JR., partners, &c., *vs.* NATHAN J. BEEBE, builder, and THE HUDSON COUNTY DRY DOCK AND WET DOCK COMPANY, owners.

1. In a suit brought on a lien claim under the mechanics' lien law (*Nix. Dig.* 487), if the declaration shows that the claim is not a lien on the property therein described, the owner may demur to the declaration ; and after the plaintiff has joined in demurrer he cannot assign for error that the defendant cannot demur to a declaration in a lien case.

2. If the case is not within the statute, the rule of pleading prescribed by the statute does not apply to it.

3. The supplement to the lien law, passed March 22d, 1860, does not apply to cases where the work was done and the lien accrued prior to the passage of the act.

4. Whether a mechanics' lien could be enforced against a floating dock, under the act of 1853, depends upon the purposes for which the dock was used, and the manner in which it was attached to the realty ; and where these facts do not clearly appear by the pleadings, the court will not decide the question on demurrer, but leave it to be shown by the evidence in the trial.

In error to the Hudson Circuit.

The averment of lien in the declaration filed in this cause was as follows :

And the said plaintiffs aver that the said debt mentioned in this declaration as due from the said defendant, Nathan J. Beebe, to the said plaintiffs is, by virtue of the provisions of the act of the legislature of the State of New Jersey, entitled "An act to secure to mechanics and others payment for their labor and materials in erecting any building," approved March 11th, eighteen hundred and fifty-three, and the supplements thereto, a lien upon all that certain building and fixture for manufacturing purposes, and the fixed machinery and gearing attached to and connected therewith, and making a part thereof, known by the name of a floating dock, being constructed in five sections connected and fastened together, making a building one hundred and seventy-five feet long by

Coddington v. Beebe.

eighty feet wide, and being thirty feet four inches in ex-
treme height, having an opening and a deck, on which to
float vessels, extending through all the said sections,
which opening is in height from the said deck twenty-
one feet and six inches, and in the width at the top sixty-
nine feet, and, at the bottom, sixty-six feet four inches,
and the floor of the said dock being eight feet ten inches
above the bottom of the said building, and is sixty-six
feet and four inches wide, and extends the whole length
of the said building, together with a boiler and a steam-en-
gine fixed in and to the said building, and making part
thereof, and an engine-house attached to and making a
part of said building, and used for pumping water out of
the said building, and also upon the estate of the Hudson
County Dry Dock and Wet Dock Company, the owner
of the said building in the land whereon the said building
stands, and to which it is attached, including the estate
of the said Hudson County Dry Dock and Wet Dock
Company in the lot whereon the said building is erected,
and to which it is attached, which estate is an estate for
years, which will terminate on the first day of November,
in the year of our Lord one thousand eight hundred and
sixty-nine, subject to the payment of a yearly rent, until
the first day of November, A. D. eighteen hundred and
sixty-four, of three thousand dollars, and for the remain-
der of the said term to a yearly rent of three thousand
five hundred dollars, which lot of land is situate in the
city of Jersey City, in the county of Hudson, and State of
New Jersey, and is bounded, abutted, and described as
follows, viz., beginning on the easterly line of Green
street, at a distance of eighty feet north from the north-
erly line of Harsimus or South Eighth street, and run-
ning thence northerly, along the easterly line of Green
street, one hundred and fifty feet, to the middle of South
Seventh or Southmayd street; thence easterly, along the
middle of South Seventh or Southmayd street, four hun-
dred feet, to the westerly line of Hudson street; thence

southerly, along the westerly line of Hudson street, one hundred and fifty feet, to a point distant eighty feet north of the northerly line of Harsimus street; thence westerly, parallel with Harsimus street, and distant eighty feet therefrom, four hundred feet, to the place of beginning: together with the exclusive right to use the land under water eastwardly in front of the said above-mentioned tract, for the purpose of a wet dock or basin, and eastwardly in front of Southmayd or South Seventh street, and up to and along the wharf or pier there standing for the same purpose, together with the land and land under water upon which the said wharf or pier now stands, of which said building and fixture for manufacturing purposes, fixed machinery and gearing, and estate for years in the land and lot of ground whereon the same is erected, and to which it is attached, the said Hudson County Dry Dock and Wet Dock Company, a company duly incorporated by an act of the legislature of the State of New Jersey, now is, and, at the time of the contracting of the debt for which this lien is claimed, hereinbefore more particularly mentioned, was the owner.

To this declaration the Hudson County Dry Dock and Wet Dock Company, who were made parties to the suit, as owners, demurred, and assigned the following causes of demurrer:   First, because, at the time when the said materials were furnished, as appears by the bill of particulars annexed to the said declaration, forming a part thereof, the last charge in which bears date July 15th, eighteen hundred and fifty-nine, no lien could be had for the performance of work or the furnishing of materials for the erection or construction of the floating dry dock, with the machinery and appurtenances, as in the said declaration mentioned, under the said act of the legislature, entitled " An act to secure to mechanics and others payment for their labor and materials in erecting any building," approved March (11th, 1853,) eleventh, eighteen hundred and fifty-three, and the supplement thereto.   Second, be-

cause a floating dock, with the machinery and gearing thereto attached, as in the said declaration mentioned, could not, at the time in the said declaration mentioned, have been the subject matter of a lien under the act entitled " An act to secure to mechanics and others payment for their labor and materials in erecting any building," approved March 11th, eighteen hundred and fifty-three, and the supplement thereto; third, because the declaration sets forth that the estate of the Hudson County Dry Dock and Wet Dock Company, in the lot in the said declaration described, is an estate for years, while, by the said act of the legislature, an estate for years cannot be the subject matter of a lien; fourth, if by the said declaration it is intended to declare against the said the Hudson County Dry Dock and Wet Dock Company as tenants, and subject any supposed estate of the said company as tenants to said lien, then the said declaration is defective, inasmuch as it does not show who was the landlord, who the tenant, and does not specify and set forth the facts which would, in law, constitute a tenancy, nor does the declaration allege that the said defendants were tenants; fifth, because the said declaration unlawfully claims a lien on the fixed machinery and gearing attached to and connecting with the said floating dock; sixth, because the said declaration unlawfully claims a lien upon lands under water and upon a pier and basin, inasmuch as the said declaration described certain property, together with the exclusive right to all the land under water eastwardly in front of the above mentioned tract for the purpose of a wet dock or basin, and eastwardly in front of Southmayd or South Seventh street, and up to and along the wharf or pier there standing, for the same purpose, together with the land and land under water upon which the said wharf or pier now stands; seventh, because the said declaration is incongruous, charging the said company, in one part thereof, as having an estate for years, in another part as owners; eighth, because the said declaration

leaves it uncertain where the said floating dock is, whether on land or on the water; if in the water, there cannot be any lien.

And the said declaration is uncertain and incongruous in the particular last aforesaid; and, also, that the said declaration is, in other respects, uncertain, informal, and insufficient.

*S. B. Ransom* and *C. Parker*, for plaintiffs in error.

*I. W. Scudder* and *A. O. Zabriskie*, for defendants.

The opinion of the court was delivered by

BROWN, J.    The declaration in this case is in usual form for merchandise sold and delivered to Beebe, with an averment that the debt due from Beebe is a lien upon the property of the dock company by virtue of the mechanics' lien law.

The defendants demurred to the declaration, and assigned several causes of demurrer, raising the question whether the facts stated in the declaration made a case within the operation of the lien act.

The plaintiffs insist that the defendants cannot answer the declaration for such cause otherwise than by the statute plea, that the house and lands were not so liable, making an issue of fact.

To this position there are several answers—1st, it is too late; the plaintiffs have joined in demurrer, and so referred the question to the court; 2d, there is no assignment of error for this cause; 3d, the rule of pleading prescribed by the statute does not apply to the case if the statute does not. This suit, so far as respects the lien claim, is brought by virtue of the 8th section of the law, which enacts, that "*when* a claim is filed, agreeably to the provisions of this act, upon any lien *created thereby*, the same may be enforced by suit in the Circuit Court," &c., giving the form of summons.    The ninth section provides that

the declaration shall conclude with an averment that the debt is a lien upon the building and lot, describing the same as in the lien claim. If, in making the description thus required of the building and lot, the plaintiff shows that either is not within the provisions of the act, that there is no lien upon them by virtue of it, it is clear that the owner is not bound to answer according to its provisions. The plaintiff, by his own showing in such case, has no right to bring the suit, and the court has no jurisdiction to proceed *in rem* as against the owner. The defendant, in a case within the statute, is to plead that the building or lands are not liable for the debt; but if the plaintiff himself shows that the property described is not so liable, certainly the defendant has no issue of fact to make with him.

A description of the building and of the lot or curtilage upon which the lien is claimed, and of its situation, sufficient to identify the same, is one of the particulars of the lien claim required by the 6th section of the act, and the same description by the 9th section, is to be inserted in the declaration. The object of the description is to identify the property, not to show a case within the statute. The declaration need not do this further than by averment. But if in the description the declaration does show that the pleader shows a case to which the statute does not apply, as if the lien is claimed upon personal property, a demurrer is well pleaded.

But the main question is, whether the declaration does show a case which, if true, is not within the statute. The declaration avers that the claim is a lien, by virtue of the provisions of the act and its supplement, upon all that certain building and fixture, for manufacturing purposes, and the fixed machinery and gearing attached to and making a part thereof, known by the name of a floating dock. It states that the building is constructed in five sections; gives its length, breadth, and height; states that it has an opening and a deck on which to float vessels; a floor eight feet five inches above the bottom of

the building, and a boiler and steam engine, making part of it, used for the purpose of pumping water out of it.  It further avers that the claim is a lien upon the estate of the dry dock and wet dock company in the land whereon the building stands and to which it is attached, including the lot whereon it is erected ; that this estate is for years in a lot described, together with the exclusive right to the use of the land under water in front of the lot for the purpose of a wet dock or basin, and up to and along the wharf there standing for the same purpose, and the land and land under water on which the wharf stands.

It is insisted, by the plaintiffs, that if the structure thus described is not within the meaning of the original act, it is clearly included in the supplement passed March 2d, 1860, after the debt accrued to plaintiffs against Beebe and just before this suit was commenced.  It can have no effect in this case unless it operates retrospectively.  This construction is not to be given to any legislative act unless the words require it.  The enactment is, that the words " fixtures for manufacturing purposes," as used in the 5th section of the said act, &c., shall be construed to include any building, or erection, or construction, of whatever description, attached or annexed, or intended to be attached or annexed to any land or tenement, and designed to be used in the building and repairing of vessels, whether the same be permanently attached to the freehold or so built as to be removed from place to place, and only temporarily attached to the land, and whether the same be intended and designed for use on land or water.

It is manifest that this supplement was not intended for construction merely, but to extend the provisions of the law to cases not within its reach.  Its words do not require that it shall have a retrospective operation ; no such intent appears from the words, and none such should be given to them.  If, however, such was the intent of the law, it would be so far void, for it would have the effect of divesting vested rights.  It would have the effect to

mortgage one man's land for the payment of another's debt. In this case, supposing the plaintiffs had no lien before the passage of this supplement, such construction would create a lien upon the dock company property for Beebe's debt to plaintiffs. This the legislature have no power to do, nor can it be supposed they intended it.

The question, then, is to be considered only with reference to the act of 1853. That act, in the 1st section, provides that every building hereafter erected or built within this state shall be liable for the payment of any debt contracted in its construction, and that such debt shall be a lien upon such building and on the land, including the lot or curtilage whereon it stands.

This declaration avers that the debt in question is a lien, by virtue of that act, upon a building, describing it, and the land whereon it stands, and to which it is attached, describing such land. So far the allegation is clearly according to the terms of the statute. The argument is, that in describing the building, the pleader shows that it is not a building, but something else, viz., a floating dock. But there is no allegation that it is a floating dock. The statement is, that it is a building, known by the name of a floating dock, erected upon and standing upon and attached to the land described. It may be known by the name of a floating dock—have been intended for a floating dock without floating at all; but it cannot be a building standing on the land whereon it is erected, which is the direct averment, and yet float upon the water. From this description, so far, the defendants cannot say but that it is a building. We must take the averment rather than the name. But supposing it to be a floating dock, not standing upon the land described, but attached laterally, is it necessarily not such a structure as may be covered by a mechanics' lien? The declaration is framed to meet not only the first, but the 5th section of the act. The 5th section provides that any addition united to the former building, and any fixed machinery or gearing, *or other*

*fixtures for manufacturing purposes*, shall be considered a building. Is it impossible that a floating dock can be a fixture for manufacturing purposes? In determining this question, it is necessary to ascertain the meaning of this phrase, fixures for manufacturing purposes, as used in this act. Fixtures originally meant some chattel personal, which had been so attached to the realty as to become a part of it and be irremovable, except with the consent of the owner of the fee. This meaning is ancient, and not now very much in use, because it seldom happens that what has become realty needs any special name to distinguish it. Besides, it is too much restricted for common use—the word, in this sense, will not serve as a general term for this kind of property. What is a fixture irremovable between the heir-at-law and the executor is not necessarily so between landlord and tenant. Annexation, which binds permanently to the land fixtures for agricultural purposes, does not always have that effect as to fixtures for manufacturing purposes. The meaning of the word, therefore, varies with the claimant, whether tradesman, farmer, or nurseryman, or whether executor, tenant, or mortgagee. Mr. Ferard, in his treatise on this subject, page 2, after mentioning this restrictive meaning, says, "There is, however, another sense in which the term fixtures is very frequently used, and which it is thought expedient to adopt in the following treatise, viz., as denoting those personal chattels which have been annexed to the land, and which may be afterwards severed and removed by the party who has annexed them, or his personal representative, against the will of the owner of the freehold." And again, on page 11, after referring to cases showing the different rights of different claimants to this kind of property under the name of fixture, he justifies the use of the word in this sense, saying, "it seems to distinguish a species of things which are subject to a very positive right of property, and which manifestly require some appropriate appellation. Indeed, the

application of the term indiscriminately to all chattels affixed to land seems to point out their physical character only, and has no reference to any legal rights that may attach to them. And with respect to its application to these things which cannot legally be removed after annexation, there appears to be the less necessity for giving a name to them, because the right of property in these cases is precisely of the same nature as that which is exercised over any part of the freehold."

This treatise is the most elaborate that has been published on this subject, and may, from its character, be regarded as authority for this definition, if authority were needed. But it is well known to every person who has had occasion to examine this subject that the word has come to be generally used in reports and treatises in the sense given to it by Mr. Ferard.

I think it may be assumed that in our statute the word fixtures, connected as it is with machinery, gearing, and manufacturing, means trade fixtures. These, as well as all other fixtures, must of course be annexed to the land, but do not become a part of it in legal contemplation, and are generally removable by the tenant during his term. If the structure be durable, and the annexation of as durable a character as the structure, the question whether fixture or not, will depend but little upon the mode of annexation. Its fitness for the particular place where it is annexed—its being connected with the general business conducted there, and other facts going to show the *intent* of the party annexing to make one thing of the land and chattel to carry out one general purpose, should, perhaps, have more effect upon the question than the mode or the permanence of the annexation. In the case before the court, supposing the thing to be a floating dock, it does not appear whether its use is at all connected with the land. It may be entirely independent of the land except the mere anchorage—it may have upon its deck all the necessary tools, machinery, and material for working

Coddington v. Beebe.

in wood, iron, and copper, and applying the work to the building, finishing, or repairing of vessels, or it may be appurtenant to and a necessary annexation to a ship yard, and merely or mainly to receive vessels on its deck, and raise them to the level of an adjoining ship yard and workshops, and the work applied to them be done partly on land and partly on the deck. The land for the uses to which it is put may require this appendage, and be useless without it.

As this case is now presented, it is impossible to determine the question on this demurrer. Even supposing the fact that the structure is a floating dock, not erected upon or standing upon the land, is fairly to be inferred from the declaration, that, alone, may not be decisive of the question. An intelligent judgment cannot be given upon it in advance.

Judgment reversed.

*For affirmance*—The CHANCELLOR, and Judges VREDENBURGH, CORNELISON, SWAIN, and WOOD.

*For reversal*—The CHIEF JUSTICE, and Judges BROWN, ELMER, HAINES, VAN DYKE, and COMBS.

SEE *Coddington* v. *Hudson Dry Dock Co.*, 2 *Vr.* 477.